COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Willis and Senior Judge Hodges
Argued at Norfolk, Virginia


WILLIAM R. PERRIGAN
                                    MEMORANDUM OPINION[*] BY
v.   Record No. 2481-96-3           JUDGE WILLIAM H. HODGES
                                         JUNE 24, 1997
CLINCHFIELD COAL COMPANY


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Susan D. Oglebay for appellant.

          Michael F. Blair (Ramesh Murthy; Penn,
          Stuart, Eskridge & Jones, on brief), for
          appellee.


     William Perrigan (claimant) appeals from a decision of the

Virginia Workers' Compensation Commission (commission) holding

that he unjustifiably refused an offer of selective employment

and denying his claim for compensation effective November 17,

1995.  Claimant contends that the commission erred when it found

Clinchfield Coal Company (employer) met its burden of proving

that it made a bona fide offer of employment.  Claimant further

asserts that, even if the offer was bona fide, he justifiably

refused it.

     Employer raises the additional question whether the

commission erred when it found that claimant had no obligation to

market his residual capacity where employer stipulated that

claimant was temporarily totally disabled from August 24 through

_____

     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

November 16, 1995.  For the following reasons, we affirm the commission in part and reverse it in part.

## Background

On appeal, we review the evidence in the light most favorable to the party prevailing below.  See R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).  "Factual findings of the commission that are supported by credible evidence are conclusive and binding upon this Court on appeal."  Southern Iron Works, Inc. v. Wallace, 16 Va. App. 131, 134, 428 S.E.2d 32, 34 (1993).[1]

Claimant sustained a compensable knee injury on January 7, 1987.[2]  An initial award was entered on July 8, 1988, pursuant to a memorandum of agreement.  Claimant subsequently returned to work, but benefits were reinstated through a supplemental memorandum of agreement when he again became disabled.

---

[1]Employer contends that claimant is precluded from challenging the sufficiency of the evidence in this appeal, as he indicated he was not challenging the sufficiency of the evidence on his notice of appeal.  As there is no evidence that employer was prejudiced by this statement, we will address claimant's sufficiency claim.  See The Greif Companies v. Hensley, 22 Va. App. 546, 552, 471 S.E.2d 803, 806 (1996); Johnson v. City of Clifton Forge, 7 Va. App. 538, 541, 375 S.E.2d 540, 543 (1989), rev'd en banc on other grounds, 9 Va. App. 376, 388 S.E.2d 654 (1990).

[2]The Employer's Initial Report of Injury and Memorandum of Agreement both refer to the injury as being to the right knee. Claimant had surgery on this knee in March 1989.  The surgery related to the most recent disability was on claimant's left knee.  Medical records indicate the left knee injury dates back to 1982.  The parties have not raised causation as an issue in this appeal.

On September 9, 1994, employer filed an application seeking suspension of benefits on the ground that claimant unjustifiably refused an offer of selective employment. Claimant stipulated that he no longer suffered from a work-related disability as of September 9, 1994, and the commission entered an order terminating benefits as of that date.

Claimant underwent surgery for replacement of his left knee on August 24, 1995. On October 6, 1995, he filed a change in condition application, seeking wage loss and medical benefits commencing August 24, 1995.

On October 19, 1995, employer's nurse case manager sent claimant's physician, Dr. James L. Gardner, a job description for the position of security communicator and asked Dr. Gardner whether claimant could perform the job. In a letter to the case manager dated November 1, 1995, Dr. Gardner wrote that claimant could perform all the requirements of this job "at most any time" if he was "forced to do so." On November 16, 1995, after meeting with claimant, Dr. Gardner wrote:

> [t]he job description as described, in my opinion, a live body can perform if they have the capacity to answer a phone and talk. I have advised [claimant] that I have to approve this job description but I have reservations about his having to drive getting to and from work and whether this is included as part of their work capabilities, etc.

Employer offered claimant a position as a security communicator on November 27, 1995. Claimant did not accept the

offer and, on December 8, 1995, employer filed an application seeking suspension of benefits based on claimant's refusal of the position. Employer further contended that any disability was unrelated to the January 7, 1987 injury.

In lieu of a hearing before the deputy commissioner, the parties submitted documentary evidence and stipulated to certain facts, including that claimant was temporarily totally disabled from August 24 through November 16, 1995 and that he did not accept employer's November 27, 1995 offer of employment.

Relying on Dr. Gardner's "reservations" about claimant's ability to drive to and from work, the deputy commissioner held that employer's offer of employment was not bona fide. The deputy commissioner awarded benefits covering the period of August 24 through November 16, 1995, but denied benefits subsequent to November 16 on the ground that claimant was not marketing his residual capacity.

Claimant appealed to the full commission, which reached the same result but for different reasons. The commission concluded that, because employer had stipulated to claimant's disability, it was barred from asserting that claimant was not marketing his residual capacity. The commission held, however, that claimant had unjustifiably refused selective employment.

In finding employer's offer of employment bona fide, the commission held that employer did not have the burden of proving claimant could travel to and from work. Rather, it concluded

4

claimant had the burden to prove such an incapacity in justifying his refusal of the position. The commission then held that claimant's refusal to accept the job on transportation grounds was unjustified, reasoning that "there is nothing in the specific restrictions imposed by the treating physician that would preclude transportation, and it is unexplained how the claimant could travel to and from his medical appointments, but could not travel to and from the workplace."

I.

Under Code § 65.2-510, "[i]f an injured employee unjustifiably refuses selective employment offered by the employer, he or she is 'no longer entitled to receive disability compensation during the continuance of the refusal.'" ARA Services and Reliance Ins. v. Swift, 22 Va. App. 202, 206, 468 S.E.2d 682, 684 (1996) (citations omitted). For benefits to be denied, "the record must disclose (1) a bona fide job offer suitable to the employee's capacity; (2) procured for the employee by the employer; and (3) an unjustified refusal by the employee to accept the job." Ellerson v. W.O. Grubb Steel Erection Co., Inc., 1 Va. App. 97, 98, 335 S.E.2d 379, 380 (1985). "In the case of a refusal of selective employment, the employer has the burden to show that the position offered is within the employee's residual capacity." American Furniture Co. v. Doane, 230 Va. 39, 42, 334 S.E.2d 548, 550 (1985).

Claimant contends that the employer's burden of proving a

bona fide offer of employment includes establishing that he was physically capable of driving to and from work. We disagree. An employer is not required to provide transportation to the selective employment it procured for the claimant. See Johnson v. City of Clifton Forge, 9 Va. App. 376, 379, 388 S.E.2d 654, 656 (1990). Likewise, an employer is generally not liable for injuries an employee sustains while travelling to and from work. See Kendrick v. Nationwide Homes, Inc., 4 Va. App. 189, 355 S.E.2d 347 (1987).

The decision in Kendrick is particularly instructive. There, we held the general rule was that "'an employee going to or from the place of where his work is to be performed is not engaged in performing any service growing out of and incidental to his employment.'" Id. at 190, 355 S.E.2d at 347 (citation omitted). The exceptions to this rule include (1) where the means of transportation is provided by the employer, or employees are compensated for the time spent by commuting; and (2) where the employee is required to perform some work-related function or duty while travelling to or from work. See id. at 191, 355 S.E.2d at 347-48. Logically, if neither of the above exceptions applies to a particular position, then the employer would not have to establish the claimant's physical ability to travel to and from work to meet its burden of proving a bona fide offer of selective employment.

There is no evidence that transportation to and from the job

site was to be provided by employer, or that it was an integral part of the job itself.  We agree with the commission, therefore, that employer was under no burden to prove that claimant was physically capable of driving to and from work.  Further, credible medical evidence supports the commission's conclusion that claimant was able to perform all the physical requirements of this position.

## II.

"When the employer establishes that selective employment was offered to an employee that was within the employee's capacity to work, the employee bears the burden of establishing justification for refusing the offered employment."  Food Lion, Inc. v. Lee, 16 Va. App. 616, 619, 431 S.E.2d 342, 344 (1993).  "To support a finding of justification to refuse suitable selective employment, 'the reasons advanced must be such that a reasonable person desirous of employment would have refused the offered work.'"  Id. (citation omitted).

While Dr. Gardner expressed "reservations" about claimant's ability to drive to and from work, claimant presented no evidence that he was incapable of doing so, or that he had even tried to do so.  He provided no other explanation for refusing the position offered him.  We find that there is sufficient credible evidence supporting the commission's finding that claimant was not justified in refusing this selective employment.  Therefore, we affirm that part of the commission's decision.

III.

Citing <u>National Linen Service v. McGuinn</u>, 5 Va. App. 265, 362 S.E.2d 187 (1987), the commission held that employer was estopped from arguing that claimant had failed to market his residual capacity subsequent to November 16, 1995. In <u>McGuinn</u>, the employer voluntarily paid the claimant temporary total disability benefits for thirteen months following an August 1983 industrial accident, but did not execute a memorandum of agreement to the commission. <u>See</u> <u>id.</u> at 267, 362 S.E.2d at 188. In January 1985, the claimant filed an application with the commission seeking continued payment of benefits. The employer defended on the ground that the claimant was not marketing his residual work capacity. <u>See</u> <u>id.</u> at 267-68, 362 S.E.2d at 188.

The commission ruled in favor of the claimant, and we affirmed, noting that the employer's failure to execute a memorandum of agreement violated former Code § 65.1-93.[3] <u>See</u> <u>id.</u> at 268, 362 S.E.2d at 188-89. "If the agreement had been filed, McGuinn's <u>entitlement</u> to compensation would have been established, as well as the compensability of his injury, thus obviating the need for him to show that he made reasonable efforts to market his remaining work capacity." <u>Id.</u> at 271, 362 S.E.2d at 190. Furthermore, had an agreement been executed, the employer "would have been obligated to honor the award until it

_____

[3]Former Code §§ 65.1-43 and 65.1-93 were merged into current Code § 65.2-701.

established by a preponderance of the evidence a change in condition . . . and had been authorized by the commission to terminate payment of benefits to McGuinn."  Id. at 270, 362 S.E.2d at 189.  The employer's "failure to abide by [former] Code § 65.1-93 misled McGuinn to his detriment into believing that he was entitled to total work incapacity payments during the period of his disability."  Id. at 271, 362 S.E.2d at 190 (emphasis added).

McGuinn is inapposite to the present case.  Here, employer filed a memorandum of agreement and supplemental memorandum of agreement with the commission following the initial injury.  Claimant's award was terminated as of September 9, 1994, and employer made no voluntary payments to claimant thereafter.  Employer responded to claimant's October 6, 1995 application by denying any current disability was related to the original, compensable injury.  Further, the stipulation of disability concerned a change in condition, not the claimant's original application.

McGuinn did not involve a stipulation, per se, but rather the employer's implicit concession, through voluntary payment of benefits, that the claimant was totally disabled as the result of a compensable accident.  See id. at 267, 362 S.E.2d at 188.  Here, the stipulations into which employer entered with claimant were evidentiary in nature, designed to narrow the issues and expedite the review of the application.  "Cases before the

9

[Workers' Compensation] Commission are frequently expedited or disposed of by stipulations . . . ." Harris v. Diamond Constr. Co., 184 Va. 711, 724, 36 S.E.2d 573, 579 (1946). "Such stipulations save both time and expense for the litigants and are to be encouraged and not condemned." Id. Employer's stipulation in no way misled claimant, but rather benefited him by conceding a fixed period of total disability.

Accordingly, we find that the commission erred in finding that employer was barred from raising the defense that claimant had failed to market his residual work capacity. Therefore, "to establish entitlement, [the claimant has] the burden of proving that he made a reasonable effort to procure suitable work but was unable to market his remaining work capacity." Washington Metropolitan Area Transit Authority v. Harrison, 228 Va. 598, 601, 324 S.E.2d 654, 656 (1985). When determining whether a claimant has made a reasonable marketing effort,

> the commission must consider several factors, including (1) the nature and extent of the employee's disability; (2) the employee's training, age, experience and education; (3) the nature and extent of the employee's job search; (4) the employee's intent in conducting the job search; (5) the availability of jobs in the area suitable for the employee, considering his or her disability; and (6) any other matter affecting the employee's capacity to find suitable employment.

The Greif Companies v. Sipe, 16 Va. App. 709, 715-16, 434 S.E.2d 314, 318 (1993).

The medical evidence established that claimant is capable of

10

performing sedentary employment.  Claimant has presented no evidence, however, of any steps he has taken since November 16, 1995 to market his residual capacity.  Therefore, having found that employer is not barred from raising this defense, we find as a matter of law that claimant has not marketed his residual work capacity since November 16, 1995.

<u>Affirmed in part,</u>
<u>reversed in part.</u>

11